UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.

JOHN HAAK,

            Defendant.

_____

15-CR-220(LJV)(JJM)
DECISION AND ORDER

## DECISION AND ORDER FOR THE SUPPRESSION OF EVIDENCE

The defendant, John Haak, is charged in a one-count Indictment with possession with intent to distribute, and distribution of, fentanyl in violation of 21 U.S.C. § 841(a)(1). The Indictment also charges under § 841(b)(1)(C) that "death . . . resulted from the use of such substance."

The defendant moved, *inter alia*, to suppress his statements made to government agents on March 4, 2015, and Magistrate Judge Jeremiah J. McCarthy issued a Report and Recommendation recommending that the statements be suppressed. For the reasons stated below, the defendant's motion is GRANTED insofar as it seeks suppression of his March 4, 2015 statements.

### I.    FACTUAL BACKGROUND

On March 4, 2015, Town of Hamburg Detective Sergeant and Drug Enforcement Administration Task Force Agent Glenn Zawierucha ("Detective Zawierucha") interviewed John Haak. Detective Zawierucha conducted the early afternoon interview at the Town of Hamburg Police Department in the presence of another officer. Haak came to the interview voluntarily and had his car with him at the police station.

Before the interview began, Detective Zawierucha gave Haak an incomplete

rendition of the *Miranda* warnings: Haak was informed of his constitutional rights (1) to

remain silent; (2) to consult counsel, who could be appointed to represent him free of

charge, if necessary; and (3) to stop answering questions at any time.  Haak was not

told that anything he said could be used against him in a court of law, but he did verbally

acknowledge his familiarity with the *Miranda* warnings, having received them once

before.  After Haak agreed to answer questions, he was told before, and several times

during, the interview, that "[he was] walking out of here today" and that "anytime, we can

stop, you can end this whole conversation, you can walk outta here."[1]

The questions posed to Haak concerned both the distribution of drugs and the

recent death of J.F., an acquaintance of Haak, from a fentanyl overdose.  Detective

Zawierucha conversationally confronted Haak about his recent text messages that in

both substance and frequency implicated Haak in supplying drugs to the deceased.  In

the words of the government, ". . . Zawierucha was seeking Haak's cooperation

regarding the source of the fentanyl and any information Haak might have regarding

other persons using the same drugs so that officers might prevent further fatalities."

Docket Item 25 at 3.

During the course of the interview, Detective Zawierucha made several

statements that give rise to the defendant's motion to suppress.  For example, shortly

---

[1] There was no transcript of the interrogation prepared in this case.  Unless otherwise
noted, all quoted statements by Haak or Detective Zawierucha are drawn directly from
Docket Item 23, the interrogation disk, which the Court has viewed and listened to
several times.  To the extent there are discrepancies between the quoted language
used in this Decision and Order and language used in the parties' submissions or Judge
McCarthy's Report and Recommendation, those discrepancies do not change the
Court's substantive conclusions.

into the interview, Detective Zawierucha told Haak that J.F. had died and that a federal

investigation was in progress:

> He overdosed on the fentanyl and died Saturday. . . . So you were the last
> person he was actually texting, and uh, the heroin that he shot up came from
> you. . . . But here's the thing. Sit back and relax, take a breath.

He then began to speak with Haak more directly about the purpose of their

conversation:

> Okay, you got a couple choices you can make right now.  There's a multi-county,
> federal investigation where people are gonna get wrapped up in a conspiracy
> charge for distributing heroin containing fentanyl.  Primarily the people that are
> the direct people that distributed this, especially if it caused a death, are gonna
> be the number one targets. . . . You don't need this shit—

Later, Detective Zawierucha said:

> I'm not looking to screw you over, not lookin' even to come after you on this, but
> you need to make a conscious decision.  Okay?  I told you you're walking out of
> here, you are walking out of here.  But there's a death investigation that this
> department here is investigating along with the Drug Enforcement Administration
> caused by heroin containing fentanyl that *you* sold to the deceased.  Technically,
> could look very bad for you. . . . I'm not lookin' to mess with you, I'm not lookin' to
> come after you, but you gotta get on board or you, you shut your mouth and then
> the weight of the federal government is gonna come down on you.

Detective Zawierucha and the defendant also had the following exchange with

respect to Haak's potential cooperation:

> Zawierucha:     Alright now here's the thing. I'm gonna ask ya, and it's your
>                 call.  Either you can get on board, put the team jersey on
>                 here, play for this team, or you can be on the losing team.
>
> Haak:           I don't wanna be on that team.
>
> Zawierucha:     No? I'm just telling you, it's as simple as that, I'm making an
>                 analogy here. I'm looking for your cooperation on this, but
>                 you're gonna save yourself a world of hurt. Alright? Who's
>                 your plug?

3

Haak decided to play on the government's team.  He provided the name of his drug supplier and agreed to participate in a controlled drug purchased from the named fentanyl dealer.  About half of the thirty-three minute interview involved discussing, and planning for, Haak's controlled drug purchase.  Docket Item 25 at 3.

Consistent with Detective Zawierucha's word, Haak walked out of the police station that afternoon.  A few days later, the defendant cooperated in the drug purchase from his supplier.  The next day, however, Haak learned that he had been cut from the team: on March 10, 2015, he was charged by federal criminal complaint for distributing, and conspiracy to distribute, heroin.  W.D.N.Y. Docket No. 15-M-1018, Docket Item 1.

## II.  PROCEDURAL BACKGROUND

On December 1, 2015, Haak was indicted in the Western District of New York, and the case was referred to Magistrate Judge McCarthy.  Docket Item 1; Text Order entered on December 8, 2015.  On January 11, 2016, the defendant filed an omnibus motion seeking, among other things, to suppress his March 2015 statements.  Docket Item 4 at 18-19 (pt. IX).  The government responded on February 8, Docket Item 6, and Haak replied on March 14.  Docket Item 9.  Judge McCarthy heard oral argument on March 21 and resolved all issues except the defendant's request for a suppression hearing.  *See* Docket Item 10.

On March 21, Judge McCarthy requested additional briefing by the parties on the suppression issue.  Docket Item 13.  In his request, Judge McCarthy candidly noted that he found the defendant's arguments in favor of suppression, including an alleged threat of prosecution, to be unconvincing.  *See* Docket Item 13 ("I see nothing *per se* improper with a threat of prosecution if defendant did not cooperate.").  But instead of simply

denying the motion to suppress the statements based on those arguments, Judge McCarthy raised an issue of his own: whether the defendant's confession was voluntary or was coerced by false and misleading promises. *Id.* at 2-5. He therefore requested additional briefing on that issue. *Id.* at 6.

In response to Judge McCarthy's request, the defendant and the government simultaneously submitted memoranda addressing the voluntariness of Haak's March 2014 statements, Docket Items 18 & 19, respectively; they also submitted several informal briefings by e-mail, Docket Item 22. In these submissions, the parties agreed that the voluntariness of the defendant's statements warranted an objective analysis (i.e., that the defendant's testimony regarding his state of mind during the interview would not be necessary). In addition, the government raised a new, public-safety justification for denying the motion to suppress the defendant's statements. *See id.*

On July 8, 2016, Judge McCarthy issued his Report and Recommendation, recommending that the defendant's motion to suppress be granted. Docket Item 24. After he rejected the government's public-safety argument for denying suppression, Judge McCarthy found that the totality of the circumstances "clearly and convincingly demonstrate[d] that [Detective] Zawierucha caused defendant to confess, by creating the false impression that if he cooperated with the government he would not be prosecuted." *Id.* at 11 (footnote omitted). For that reason, and based on his finding that Haak's confession was involuntary, Judge McCarthy recommended to this Court "that defendant's motion . . . be granted to the extent that it seeks suppression of the statements [given to Detective Zawierucha], but that the remainder of the motion be denied as moot, having been withdrawn." *Id.*

The government timely objected to the Report and Recommendation, Docket Item 25, the defendant responded, Docket Item 27, and the government replied, Docket Item 29.  On September 7, this Court heard oral argument on the government's objections, and both sides submitted additional papers on September 15 and 18. Docket Items 39 & 40.

This Court now has reviewed Judge McCarthy's Report and Recommendation, along with all papers and evidence submitted by both sides.  After a de novo review, the Court accepts the Report and Recommendation of Judge McCarthy and grants the defendant's motion to suppress.

## III.    APPLICABLE LAW

### A.  Standard of Review

The court reviews de novo a magistrate judge's Report and Recommendation to suppress evidence in a criminal case.  *See* 28 U.S.C. § 636(b)(1); Fed. Rule Crim. P. 59(b)(3).  In conducting its review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### B.  Voluntariness of Confessions

Whether Haak's statements to Detective Zawierucha should be suppressed hinges on whether his statements were voluntary.[2]  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself

---

[2] The Report and Recommendation found, and the parties agree, that Haak was not in custody and that Detective Zawierucha therefore was not required to issue the *Miranda* warnings to Haak.  *See* Docket Item 24 at 5.  As a result, the inquiry here focuses on whether the defendant's statements were voluntary under the Due Process Clause of the Fifth Amendment, not on whether there was a *Miranda* violation.

. . . without due process of law."  U.S. Const. amend. V.  The voluntariness inquiry, conducted under this Due Process Clause of the Fifth Amendment, considers "whether a defendant's will was overborne" by the circumstances of the confession.  *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

Before a court can find that a confession was involuntary, it first must find that there was police activity and that this activity was coercive.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.").  The government bears the burden of proving that a defendant's confession was voluntary, *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010), but only when there is "a substantial element of coercive police conduct" that is "so offensive to a civilized system of justice that [it] must be condemned" should a court conclude that a defendant's statement was involuntary.  *Connelly*, 479 U.S. at 163, 164.  And a confession is involuntary only if there is a causal connection between the interrogation and the confession.  *Id.*

Because "[n]o single criterion controls whether an accused's confession is voluntary[,] whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances."  *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988).  This totality test of voluntariness centers on "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of the law enforcement officials."  *Id.* at 901-02.  After considering these factors, the court decides whether "under the totality of circumstances

7

a suspect's will was overborne and the confession was not therefore a free and voluntary act." *Id.* at 902. The inquiry is an objective one. *See United States v. O'Brien*, 498 F. Supp. 2d 520, 534 (N.D.N.Y. 2007) ("To determine whether a statement is uncoerced and voluntary within the ambit of the Due Process Clause, a court must objectively assess the totality of the circumstances surrounding the interaction between the suspect and the police . . . ."), *aff'd in* 303 F. App'x 948 (2d Cir. 2008).

With respect to the first set of circumstances—the characteristics of the accused—courts consider whether a defendant's prior criminal records demonstrates familiarity with police questioning and *Miranda* rights. *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995). Courts also consider a defendant's maturity and age, education, and intelligence, *id.*, as well as a defendant's unique sensitivities, inability to cope with stress, and relationship to the interrogator. *Arizona v. Fulminante*, 499 U.S. 279, 286 n.2 (1991).

Under the second set of circumstances—the conditions of the interrogation—courts examine whether a defendant was in custody as well as whether the defendant was told that he had to speak to police officers, whether the defendant was informed that he was or was not under arrest, and whether he could leave at any point during an interview. *See Ruggles*, 70 F.3d at 265. Other considerations include the place of interrogation and the presence of counsel. *Green*, 850 F.2d at 902.

The third and final set of circumstances—the conduct of law enforcement officials—includes:

> [any] repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights . . .; whether there was physical mistreatment such as beatings . . .; or long restraint in handcuffs, and whether

8

> other physical deprivations occurred such as depriving an accused of food, water
> or sleep . . .; or even of clothing . . . .

*Id.* But police conduct need not be physical to make a confession involuntary: relevant

"police conduct might include psychologically coercive techniques such as

brainwashing[,] promises of leniency or other benefits," or threats.[3]  *Id.*  If these

techniques, viewed objectively and under the totality of the circumstances, overcame

the will of the defendant, the confession is involuntary.

Indirect or general promises of leniency usually are not enough to render a

confession involuntary.  "In assessing the totality of the circumstances, vague promises

of leniency for cooperation are just one factor to be weighed in the overall calculus and

generally will not, without more, warrant a finding of coercion."  *United States v. Gaines*,

295 F.3d 293, 299 (2d Cir. 2002) (finding a statement voluntary where government

agent said the prosecutor and judge would be made aware of the defendant's

cooperation); *United States v. Romano*, 630 F. App'x 56, 58–59 (2d Cir. 2015)

(summary order), *cert. denied,* 136 S. Ct. 2041 (2016).  On the other hand, falsely

promising specific favorable treatment when the questioner does not intend to honor the

---

[3] Because Haak originally sought to suppress his statements on the theory that
Detective Zawuierucha had coercively threatened him, Docket Item 16 at 1, the Court
pauses to acknowledge the difficult-to-discern distinction between threats and promises.
In the words of the Ninth Circuit, "In many ways, both types of statements are simply
different sides of the same coin: 'waive your rights and receive more favorable
treatment' versus 'exercise your rights and receive less favorable treatment.'" *United
States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994).  But they are "not entirely
interchangeable."  *Id.*  For example, the Fourth Circuit found that the threat of "you can
do five years because you're not coming clean" did not constitute an implied promise
that "if you 'come clean,' you will not be prosecuted."  *United States v. Braxton*, 112
F.3d 777, 782, 783 (4th Cir. 1997) ("A law enforcement officer's admonishment to a
suspect during an investigatory interview to tell the truth or face consequences is simply
not an implied promise of non-prosecution.").

promise may cross the line and overcome a defendant's will to remain silent. *See Ruggles*, 70 F.3d at 265.

And sometimes, even falsity is not enough: not all "[p]loys to mislead a suspect or to lull him into a false sense of security" are necessarily coercive. *United States v. Pryor*, 474 F. App'x 831, 835 (2d Cir. 2012) (quoting *Illinois v. Perkins*, 496 U.S. 292, 296 (1990)). Ultimately, although law enforcement's affirmative misrepresentations could be coercive enough to render a defendant's statement involuntary, *United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) (discussing waiver of the Fifth Amendment privilege), a statement should not be suppressed where a defendant merely "was moved to cooperate, rather than coerced." *United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014). Simply stated, the question is whether a promise is false and specific enough to coerce a defendant to confess against his will. In the words of the Second Circuit, an officer's touting "unfulfillable promises or certain other misrepresentations . . . might render a confession involuntary," largely "because they overcome his desire to remain silent." *Gaines*, 295 F.3d at 299.

## IV.   ANALYSIS

### A. The Totality of the Circumstances Weighs in Favor of Suppression.

Haak's personal characteristics do not suggest that he is prone to coercion. For example, he indicated that he was acquainted with his *Miranda* rights, having been given them once before. *See, e.g.*, *United States v. Burrous*, 147 F.3d 111, 116 (2d Cir. 1998) (statements found voluntary where the sixteen-year-old defendant had been arrested one month earlier on an analogous charge). Likewise, the defendant seemed familiar with the criminal justice system and readily understood the concept of the

contemplated controlled drug purchase.  *See, e.g.*, *Ruggles*, 70 F.3d at 265 (noting defendant's criminal record and prior convictions).

Haak's maturity was on par with his adult age.  His actions before, during, and after the recording exhibit at least average intelligence.  He had no special relationship or prior encounters with Detective Zawierucha that would have made him particularly trusting or susceptible to confiding in the agent.  All these factors weigh in favor of the conclusion that the characteristics of the accused did not undermine the voluntariness of his statements.[4]

The conditions of the interrogation likewise do not in and of themselves suggest that Haak's confession was involuntary.  As noted above, the parties appear to agree, and Judge McCarthy concluded, that the defendant was not in custody at the time of the interrogation.  Docket Item 18 at 5; Docket Item 19 at 1; Docket Item 24 at 5.  Haak came to the police station voluntarily to discuss the case with Detective Zawierucha.  Both the detective and the other officer present in the moderately sized interrogation room were dressed in plain clothes.  The entire interview was conversational and involved casual talk both before the interview and after it concluded.  There certainly

---

[4] On the other hand, Haak may well have been shaken when Detective Zawierucha told him that J.F., an acquaintance of Haak, had died.  Haak and J.F. apparently had communicated frequently, and judging from Haak's demeanor, the interview was the first time he had heard the news of J.F.'s death.  Whatever relationship existed between Haak and the deceased, they were more than strangers; hearing the news of J.F.'s death for the first time while sitting across from a law enforcement officer in an interrogation room undoubtedly had an impact on Haak.  Although J.F.'s death was the truth—Detective Zawierucha "[was] not blowing smoke up [Haak's] ass"—the timing of the news, and the fact that it was immediately followed by requests for cooperation, is relevant and bears on the voluntariness of statements subsequently made.

were no threats of physical punishment, and the defendant appeared relatively calm

throughout the duration of the interview.

As also noted above, Haak was given *Miranda* warnings, albeit incomplete

ones,[5] which largely informed him that he was not required to speak with law

enforcement.  He repeatedly was told that he could leave at any point during the

interview and that he would be walking out of the police station that afternoon.  When

the interview ran longer than anticipated, Detective Zawierucha politely asked Haak

whether Haak could answer a few more questions before he left.  Thus, with respect to

the conditions of the interrogation, "it would be hard to imagine a more routine, benign,

and noncoercive investigatory scenario."  *See Braxton*, 112 F.3d at 781 (finding a

confession voluntary where the defendant was not under arrest, engaged in a pre-

arranged interview in his mother's home, and was not taken into custody at the

conclusion of the hour-long interview); *accord Cole v. Lane*, 830 F.2d 104 (7th Cir.

1987) (affirming a finding that a thirty-minute interrogation was not unduly coercive

---

[5] *Miranda* warnings are required only where there is a custodial interrogation—that is, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Here, the parties agree that Haak was not in custody, and *Miranda* warnings therefore were not required.  The parties cited no law regarding the effect of incomplete *Miranda* warnings in non-custodial interrogations, although some case law suggests that where *Miranda* warnings are not required, the completeness of gratuitously issued warnings is likewise not required.  *See, e.g.*, *Cohen v. United States*, 405 F.2d 34, 35, 39, 40 (8th Cir. 1968) (finding Internal Revenue Service Agents need not give *Miranda* warnings to taxpayers who are not in custody, in a case where defendant was not advised that counsel would be provided for him).  Because suppression is warranted based on the totality of other circumstances, the incomplete *Miranda* warnings do not affect the result.  In other words, whether the issuance of *Miranda* warnings that fail to inform a defendant that his statements can later be used against him weighs in favor of the defendant or the government does not alter the Court's conclusion to suppress Haak's statements.

where the defendant "was an educated adult who appeared both calm and in control when he confessed" and who was informed of his *Miranda* rights).

Thus, the first two sets of circumstances—the defendant's personal characteristics and the conditions of interrogation—largely cut in favor of finding Haak's statements to be voluntary. Nevertheless, the third factor—the conduct of the law enforcement officials—warrants suppression of Haak's March 4, 2015 statements to Detective Zawierucha.

There can be little doubt that Detective Zawierucha promised that in exchange for Haak's cooperation, he would not be charged. Detective Zawierucha may not have made that promise in so many words, but his message was nevertheless loud, clear, and unmistakable.

For example, Detective Zawierucha told Haak that "I am not looking to mess with you" or even "to come after you *but* you gotta get on board *or* you, you shut your mouth and then the weight of the federal government is gonna come down on you." (emphasis added). What can that mean other than that the authorities will not "come after" Haak if Haak "gets on board"—that is, that Haak will not be charged with a crime if he cooperates—but "the weight of the federal government" will come down on him if he does not?

Haak's choice was an easy one, Detective Zawierucha told him. He could "play for this team"—that is, cooperate with the government—or he could "be on the losing team." And if Haak played on the government's team, he was told, "you're gonna save yourself a world of hurt."

So Haak joined what he thought was the winning team. But just a few days after he put on the government's "jersey" and cooperated, he learned that his teammates—led by team captain Zawierucha—had deserted him. He was charged with a crime, and "the weight of the federal government [came] down on [him]."

That is a false and unfulfilled promise—a misleading representation—by any definition. Haak was not simply told that things will be better for him if he cooperates; on the contrary, he was told that he would escape the weight of the federal government coming down on him, and Detective Zawierucha's coming after him, if he played along. And that is the very sort of misrepresentation—the "more," *see Gaines*, 295 F.3d at 299—that turns vague promises of better treatment into improper coercion. *See also, e.g.*, *Santobello v. New York*, 404 U.S. 257, 262 (1971) (holding that where a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *United States v. Lall*, 607 F.3d 1277, 1286-87 (11th Cir. 2010).[6]

The causal relationship between the police conduct and the defendant's coerced statements also is clear. *See Connelly*, 479 U.S. at 164. As the defendant put it, "Given the options presented, who in their right mind would decide not to cooperate or decide not to join the winning team"? Docket Item 27 at 5. Considering the options presented to Haak, the implied promise of avoiding prosecution was not just a factor in

---

[6] In its reply memorandum, the government argues that Judge McCarthy employed an "inverse fallacy" in his reading of Detective Zawierucha's statements, Docket Item 24 at 3-4: that is, he confused a threat of prosecution in the event of non-cooperation with a promise of non-prosecution in the event of cooperation. Docket Item 25 at 8 n.3. Although, as noted above, the line between threats and promises is thin, Detective Zawierucha's statements were posed as either-or propositions—either cooperate and avoid the government coming after you or fail to cooperate and face the weight of the federal government. As such, they were both threats and promises.

his decision—it was the critical factor.  *Cf. Green*, 850 F.2d at 903-04 (confession

voluntary although police falsely informed defendant that fingerprints matched prints in

victims' apartment because defendant was motivated to confess by fear that he would

kill again in another "blackout").

     *United States v. Walton*, 10 F.3d 1024 (3d Cir. 1993), underscores the point.  In

that case, an agent told the defendant that he could speak "off the cuff," implying that

the defendant's statements would not be used against him.  *Id.* at 1027.  The court

found the ensuing confession to be involuntary because "given the uniquely influential

nature of a promise from a law enforcement official not to use a suspect's inculpatory

statement, such a promise may be the most significant factor in assessing the

voluntariness of an accused's confession in light of the totality of the circumstances."

*Id.* at 1030.  The same can be said about Detective Zawierucha's implied promise that

he was "not looking to screw [Haak] over," and that he was "not lookin' even to come

after [Haak]."  And when he contrasted that with "the weight of the federal government"

that would "come down on [Haak]" if he chose not to cooperate, he created a dichotomy

between cooperation and the consequences of failing to cooperate that was at least as

"uniquely influential" as the implied promise in *Walton*.

     In sum, Detective Zawierucha's implicit promises to Haak that he would avoid

prosecution by cooperating were false, misleading, and coercive.  Even though the

other circumstances in the analysis suggest that Haak's confession would have been

voluntary, the detective's conduct "inevitably lead[s] to a conclusion that under the

totality of circumstances [Haak's] will was overborne and the confession was not

therefore a free and voluntary act."  *Green*, 850 F.2d at 902; *see also id.* ("The final and

most critical circumstance for purposes of this appeal is the law enforcement officers' conduct.").

**B.  The Government's Public-Safety Exception Is Inapplicable.**

In responding to Judge McCarthy's request for additional briefing, the government raised a new argument based on the Supreme Court's decision in *New York v. Quarles*, 467 U.S. 649 (1984).  *See* Docket Item 22 at 4.  In that case, the Court recognized an exception to the rule requiring the suppression of custodial statements made in the absence of *Miranda* warnings, holding that the warnings "need not precede questions reasonably prompted by a concern for the public safety . . . ."  *United States v. Simmons*, 661 F.3d 151, 155 (2d Cir. 2011) (quoting *United States v. Newton*, 369 F.3d 659, 677 (2d Cir. 2004)).  Under *Quarles*, public safety provides "a narrow exception to the Miranda rule . . . ."  467 U.S. at 658.  Here, however, denying suppression on that basis would be neither narrow nor an exception to *Miranda*.

Part of the rationale of *Quarles* was the ease of the exception's application: "The exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it."  *Id.*  In *Quarles*, for example, the questioning police officer was attempting to locate a missing weapon in a public supermarket when, after a woman's report of rape by an armed suspect, the officer discovered the fleeing suspect's shoulder holster to be empty.  *Id.* at 651-52.

The exigency here, according to the government, is the threat posed by drug distribution and conspiracy.  Drug cases, however, are always marked by some level of threat to the public safety.  Certainly, the risks of an overdose or a bad batch, of infected needles or fentanyl-laced heroin, are among the myriad perils inherent in consuming

16

illegal drugs.  Because illegal drugs always pose risks to users, applying *Quarles* to drug cases like this one—without more—would allow the exception to swallow the rule. *See* Docket Item 22 at 1.

Here there was no urgency as there was in *Quarles*.  Here there was no evidence that police needed to find a particular bad batch of drugs that imminently risked killing users.  Indeed, after Haak confessed, the police arranged only for Haak to make his undercover buy; they did not try to immediately locate any dangerous drugs on the street.  So there was nothing "exigent" about securing Haak's confession.

Further, as the case law interpreting *Quarles* makes clear, the public-safety exception applies to the requirement of the *Miranda* warnings, not to excuse methods of interrogation that might lead to involuntary statements.  Here, because Haak was not in custody when he made the statements at issue, Detective Zawierucha was not required to give him *Miranda* warnings.  And so the exigency exception in *Quarles* has nothing to do with anything.

For those reasons, this case does not warrant application of the *Quarles* exception, let alone its extension to new, non-*Miranda* grounds.

## V.    CONCLUSION

For all the above reasons, this Court agrees with Magistrate Judge Jeremiah J. McCarthy that under the totality of the circumstances, Detective Zawierucha's March 4, 2015 interview with the defendant, John Haak, rendered the defendant's statements involuntary under the Due Process Clause of the Fifth Amendment.

The Court adopts the Report and Recommendation entered by Magistrate Judge Jeremiah J. McCarthy in the Western District of New York on July 8, 2016 (Docket Item 24).  The defendant's motion (Docket Item 4) is therefore GRANTED to the extent it seeks suppression of the defendant's statements given to Detective Zawierucha. Because the remainder of the motion has been withdrawn, it is DENIED as moot.

SO ORDERED.

Dated:     October 18, 2016
           Buffalo, New York


                                        _s/Lawrence J. Vilardo_
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE